UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:

SERVIO AND GWENETH ROMANO

　　　Debtors

CASE NUMBER
04-19155

SECTION "B"
CHAPTER 7

**MEMORANDUM OPINION**

The objection filed by J. Marshall Miller, trustee (hereinafter "trustee") to the debtors' claim of exemption and the response filed by debtors' counsel, were heard on March 2, 2005. At the hearing, the court requested that the parties file memoranda discussing whether a decision of one district court judge in a multi-judge district is binding upon the bankruptcy court in a suit involving the same issue, but different parties. Memoranda were submitted by both the trustee and the debtors, and the matter was taken under submission.

**1. The exemption**.

The debtors filed a voluntary Chapter 7 petition, schedules and a statement of financial affairs on December 7, 2004. Among the items claimed as exempt on Schedule C are:  1) a 1995 Chevy C-1500 with an exemption value of $7500 and 2) a 1995 International school bus with an exemption value of $20,000. Both vehicles are claimed as exempt under the provisions of La. Rev. Stat.

-1-

§13:3881(A)(2), which exempts property necessary to the trade, calling or professions of the debtor.

On February 7, 2005, the trustee filed an objection to the debtor's claim of exemption of the vehicles. The trustee asserts that La. Rev. Stat. 13:3881(A)(2)(d) limits the exemption to one motor vehicle, and only up to an equity value of $7,500. The debtors responded to the objection, asserting that the 1995 school bus is a tool of the trade under La. Rev. Stat. §13:3881(A)(2)(a), and is exempt for its full value. The court has visited this confusing area of the law before.

On August 6, 2004, this court entered an order and memorandum opinion in the case of *Flora Vicknair*, [1] which sustained the trustee's objection to the exemption of a school bus driven by the debtor. In *Vicknair*, the debtor had sought to exempt two vehicles, a minibus with an exemption value of $4,000 and a school bus with an exemption value of $25,000. This court, in a written opinion, determined that La. Rev. Stat. §13:3881(A)(2)(d) permitted the exemption of only one motor vehicle, limited to an equity value of $7500.[2] This decision was appealed, but the trustee settled with the debtor, and the appeal was dismissed.[3]

---

[1] 315 B.R. 822 (Bankr. E.D. La. 2004).

[2] *Id.* at 826-827.

[3] Pleading 72; Bankruptcy Case No. 04-12947.

Shortly after the *Vicknair* decision, an oral decision was rendered in another case with a similar exemption issue  *In re Tessie Belsome*.[4]  This court denied the exemption of a 1997 Thomas school bus with a exemption value of $22,500 under La. Rev. Stat. 13:3881(A)(2)(a) as a tool of the trade, but permitted the vehicle's equity value of $7,500 an exemption under Article 3881(A)(2)(d), as an exempt motor vehicle.  On appeal, the district court reversed the bankruptcy court's decision, and allowed the entire exemption value of the school bus as a tool of the trade under subsection (a).[5]

2.  **Binding Effect of the District Court Opinion**.

The issue in this case is whether the *Belsome* decision, by a single district court judge in a multi-judge district, is binding upon this court in all matters concerning the exemptions of motor vehicles.  It is undisputed that the decision of the district court is binding upon this court in all future matters in the *Belsome* bankruptcy case itself.

The debtor asserts that it is settled law that a bankruptcy court is absolutely bound to follow the district court's decision in the district in which it sits.  Not surprisingly, the trustee asserts that the bankruptcy court is not bound by a decision

---

[4]  Bankruptcy Case No. 04-14087.

[5]  Opinion, United States District Court, Case No. 04-2962 CV, February 18, 2005.

-3-

of a single district court judge in a multi-judge district.  Case law exists which

supports both contentions, and no decision from the Fifth Circuit has been found

which addresses the issue.

One leading commentator has noted that "[t]he *stare decisis* effect of

bankruptcy appeals decisions by district courts and Bankruptcy Appellate Panels

has been the subject of considerable disagreement."[6]  Two distinct approaches have

emerged from the courts that have considered the issue:

1) the opinion of the district court is viewed as persuasive, and not as

binding authority on the bankruptcy court;[7]

---

[6]   6 NORTON BANKRUPTCY L. AND PRAC.  2nd 148:17.  Several articles have been written on the subject, including:  Singerman, Paul S., "Of  Precedents and Bankruptcy Court Independence," Am. Bankr. Inst. J. 1 (July/Aug 2003); Muniz, Michael H., "Anarchy or Anglo-American Jurisprudence?  The Doctrinal Effect of Stare Decisis upon Bankruptcy Courts in the Face of District Court Precedents," 76 Fla. B.M. 34 (Dec. 2002); Levine, David A., "Precedent and the Assertion of Bankruptcy Court Autonomy; Efficient or Arrogant," 12 Bank. Dev. J. 185 (1995); Maddock III, John H., "Stemming the Tide of Bankruptcy Court Independence: Arguing the Case for District Court Precedent," 2 Am. Bankr. Inst. L. Rev. 507 (Winter, 1994); Bussell, Daniel J., "Power, Authority and Precedent in Interpreting the Bankruptcy Code," 41 U.C.L.A. L. Rev. 1063 (April 1994).

[7]   *See, e.g.,  In re Raphael*, 230 B.R. 657, 664, *rev'd on other grounds*, 238 B.R. 69 (D.N.J. 1999); *In re Shattuc Cable Corp*., 138 B.R. 557 (Bankr. N.D. Ill. 1992); *In re Gaylor*, 123 B.R. 236, 241-243 (Bankr. E.D.Mich. 1991);  *In re Windsor Comm. Group, Inc*., 67 B.R. 692 (Bankr. E.D. Pa. 1986).

2) the district court opinion is binding precedent in the district where the decision appealed from arose.[8]

### (A). Analysis of decisions holding that the district court opinion is not binding.

One of the first cases to consider an opinion of the district court as merely persuasive, and not binding, is *In re Windsor Communications Group, Inc.*[9]  The court was asked whether actions to recover accounts receivable were noncore or core matters, following the decision in *Marathon*.[10]  The district court had issued more than one decision, with varying results.[11]  Ultimately determining that the contrary decision of the district court was mere *dictum*, the bankruptcy court held that it must give "great deference to, but . . . need not blindly follow, decisions of our local district court." [12]

---

[8]  *See, e.g., In re Shunnarah*, 273 B.R. 671, 672-673 (M.D. Fla. 2001); *In re Rand Energy Co.*, 259 B.R. 274, 276 (Bankr.N.D. Tex. 2001); *In re Windmill Farms, Inc.*, 70 B.R. 618, 621-22 (9th Cir. BAP 1987), *rev'd on other grounds*, 841 F.2d 1467 (9th Cir. 1988), *on remand*, 116 B.R. 755 (Bankr. S.D. Cal. 1990); *In re Johnson-Allen*, 67 B.R. 968, 972-73 (Bankr. E.D.Pa. 1986).

[9]  67 B.R. 692 (Bankr. E.D. Pa. 1986).

[10]  *Northern Pipeline Const. Co. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982).

[11]  *Windsor*, 67 B.R. at 694-95.

[12]  *Id*. at 699.

*In re Gaylor*[13] examined  the hierarchical structure of federal courts and the *stare decisis* effect of a district court opinion on the bankruptcy court.  The court noted that while appeals are taken from the bankruptcy court to the district court, the bankruptcy courts are not inferior to district courts for *stare decisis* purposes. It noted that judges within a multi-judge district are not bound by decisions of other district judges.[14] The court reasoned that "a decision of the district court cannot be binding on the bankruptcy courts unless it is also binding on the district court as a whole."[15]  Noting that 28 U.S.C. §151 provides that bankruptcy courts constitute "a unit of the district court," the court reasoned that the bankruptcy courts operate as an adjunct to the district court.  It concluded that bankruptcy courts were not therefore bound by the decisions of a single district court in a multi-judge district.

Other courts have reached the same conclusion, but for slightly different reasons.  For example, in *In re Raphael*,[16] the court noted a line of cases

---

[13]   123 B.R. 236 (Bankr. E.D. Mich. 1991).

[14]   *Id*. at 242.

[15]   *Id.* The court noted that one problem posed by unpublished district court opinions is that the bankruptcy court must canvas the other judges in the district to determine if they have reached a contrary conclusion on the issue, resulting in an unwieldy system.

[16]   230 B.R. 657 (Bankr. D.N.J. 1999), *rev'd on other grounds* 238 B.R. 69 (D. N.J. 1999).

establishing that "there is no such thing as 'the law of the district.'"[17] Because the

district court judges were not bound by opinions of other district court judges, the

court reasoned that the bankruptcy court could not be bound by the decision of a

single judge where an appeal may be heard by a number of district court judges. [18]

It noted that:

> requiring bankruptcy judges to be bound by a district court opinion in
> a multi-judge district "would result in allowing the random
> assignment of cases to a judge to dictate which judge first ruled on
> any issue and thereby made the binding law of the district, even if all
> the other judges in the district strongly disagreed with the holding."[19]

Commentators have noted that a majority of courts hold that a bankruptcy

court is not bound by the decision of a single district court judge in a multi-judge

district.[20]

### (B). Analysis of decisions holding that the district court opinion is binding precedent on bankruptcy courts in that district.

_____

[17] *Id*. at 664, *quoting Threadgill v. Armstrong World Indus., Inc*., 928 F.2d 1366, 1371 (3rd Cir. 1991).

[18] *Id*.

[19] *Id., quoting In re Shattuc Cable Corp*., 138 B.R. 557, 567 n. 10 (Bankr. N.D. Ill. 1992).

[20] Singerman, Paul S., "Of Precedents and Bankruptcy Court Independence," 22 Am. Bankr. Inst. J. 1(2003); *see also In re Raphael*, 230 B.R. 657, 664 (Bankr. D. N.J. 1999)(and cases cited therein).

Other courts have concluded that the bankruptcy court is bound by a decision of any district court within the district.[21]  For example, in *In re Shunnarah*,[22] the district court reversed a holding of the bankruptcy court that it was not bound by a decision of a single district judge in a multi-judge district.  It reasoned that "[b]ecause a bankruptcy court is an Article I court, and appeals from such court are taken to the Article III courts, which have reversal power over the bankruptcy courts" the  bankruptcy court are inferior courts for *stare decisis* purposes.[23]  Thus, *Shunnarah* and other courts hold that the bankruptcy court would be bound by published district court opinions, until an opinion containing a different holding is published.[24]

In *In re Phipps*,[25] the bankruptcy court gave a detailed analysis of the binding nature of district court opinions.  It reasoned that a bankruptcy court is an inferior court because its decisions may be reversed by a single judge of another

---

[21]  *See, e.g., Bryant v. Smith*, 165 B.R. 176 (W.D. Va. 1994); *In re Phipps*, 217 B.R. 428 (Bankr. W.D.N.Y. 1998); *In re Muslain, Inc.*, 157 B.R. 252 (Bankr. N.D. Cal. 1993).

[22]  273 B.R. 671 (M.D. Fla. 2001).

[23]  *Id*. at 672.

[24]  *Id*. at 673, *citing In re Phipps*, 217 B.R. 427 (Bankr. W.D.N.Y. 1998).  Under the reasoning of *Shunnarah*, this court would not be bound by the unpublished *Belsome* decision.

[25]  217 B.R. 427 (Bankr. W.D.N.Y. 1998).

court.[26]  It dismissed the argument that the bankruptcy court is not bound because a

district court is not bound by the decision of other district judges by stating that

"[f]urthermore, whatever else the 1984 jurisdictional amendments did or did not

do, they did not make this writer a judge of the district court, for purposes of 28

USC §132(b) and (c)."[27]  Additionally, the court reasoned that this determination

was enforced because a  district judge may *sua sponte* withdraw the reference from

a bankruptcy court.[28]  The court noted that in the Supreme Court decision of

*Whiting Pools*,[29] each level of court presumed that the bankruptcy court was bound

by a district court decision.[30]  Finally, the court concluded that the 1984

amendments to the Bankruptcy Code made the bankruptcy courts more subordinate

to the district courts, and not merely a "unit" of the district court.[31]  Because

neither the bankruptcy judges nor lawyers who practice in bankruptcy court can be

expected to know about district court decisions that have not been published, the

---

[26]  *Id*. at 430.

[27]  *Id*.

[28]  *Id*.

[29]  *United States v. Whiting Pools, Inc*., 462 U.S. 198, 201 n. 6 (1983).  See discussion of the history of the case at *Phipps*, 217 B.R. at 430-431.

[30]  *Id*. at 431.

[31]  *Id.*

decision was limited to published decisions of the district court.[32]

Other decisions holding that the bankruptcy court is bound by decisions of the district court make no distinction between published and unpublished decisions.  In *Bryant v. Smith*, [33] the district court held that the "bankruptcy court is not an Article III court",  functions as an adjunct of the district court and that "a bankruptcy judge is no more free to ignore the clear precedent of the district court than is a United States Magistrate Judge."[34]  Instead, the clear, non-conflicting precedent of the district court must be followed.[35]  Similarly, in *In re Johnson*,[36] the court held that bankruptcy courts should defer to well-reasoned decisions by a district judge in the same district.  Significant to this decision was the determination that deference would  ease and expedite the appeal process to the circuit level, which precedent would unquestionably be binding.[37]

This court was unable to locate any decisions of the federal Fifth Circuit or

---

[32]  *Id.* at 431-32.

[33]  165 B.R. 176 (W.D. Va. 1994).

[34]  *Id*. at 180.

[35]  *Id*. (Bankruptcy court is bound by opinions of the district judges in its district so long as those opinions are not in conflict.)

[36]  300 B.R. 471 (Bankr. D. Minn. 2003).

[37]  *Id*. at 475-476.

of a district court in this district discussing the binding effect on the bankruptcy court of a single district court opinion in a multi-judge district.[38]  Two decisions have been rendered by bankruptcy courts located in this circuit, both holding that a bankruptcy judge should follow the decision of a district court in its district.[39]  While these decisions are not binding on this court, they are helpful in establishing the direction taken by other courts in this circuit.

### (C).  A single district court opinion is not binding on the bankruptcy court in a multi-judge district.

This court agrees with the majority, and holds that a single decision of a district court in this multi-judge district is not binding upon this court.  The court agrees with the reasoning of cases such as *Gaylor*,[40] that 28 USC §151 provides that bankruptcy courts constitute "a unit of the district court," and operate as an adjunct to the district court.  Because a district judge in the Eastern District of Louisiana is not bound by the decisions of other district judges, the bankruptcy court is similarly not bound.  Moreover, because there are sixteen district court

---

[38]  *See In re Johnson*, 300 B.R. 471, 474 (Bankr. D. Minn. 2003)(noting lack of circuit court opinion, a split in the district court opinions, and a split in bankruptcy opinions).

[39]  *In re Rand Energy Co.*, 259 B.R. 274, 276 (Bankr. N.D. Tex. 2001)(under the federal hierarchical judicial structure, decision of district court is binding on bankruptcy court)*; I n re Whitehorn*, 99 B.R. 734 (Bankr. N.D. Tex. 1989).

[40]  67 B.R. 692 (Bankr. E.D. Pa. 1986).

judges in this district, a rule imposing *stare decisis* effect of a district court decision effectively makes final the first district court to rule on an issue, even though other judges in the district may disagree with the decision. Such a rule effectively makes the random assignment of appeals determinative for *stare decisis* purposes, and leaves no room for differing opinions of other judges in the district.

### 3. **The exemption of the school bus is denied**.

This court's decision in *Vicknair* contains an analysis of §3881, its history, and a discussion of state court decisions applying this Louisiana exemption statute. For the reasons stated in *In re Vicknair,*[41] which will not be repeated in this decision, the court holds that La. Rev. Stat. 13:3881 does not provide for an exemption of the school bus as a "tool of the trade," and accordingly denies the debtor's claim of exemption.

An analysis of the decision in *Belsome* convinces this court that another district judge reviewing the same question would reach a contrary result to that contained in the *Belsome* case, or that the district judge's opinion in *Belsome* may very well be reversed by the Fifth Circuit, where an appeal now lies. That conviction arises for a number of reasons. The district court relied largely upon

---

[41] 315 B.R. 822 (Bankr. E.D. La. 2004).

two cases in its decision, that of *In re Damon Lewis*[42] and *Hamner & Co., Ltd. v. Johnson*.[43]  Both cases are distinguishable.  The *Lewis* case involved whether the debtor could exempt a single vehicle, a 1997 Freightliner truck, as a tool of the trade. With little analysis, the court permitted the exemption in *Lewis,* relying primarily on the purpose of §3881 to "provide the subsistence, welfare, and fresh start of the debtor . . . ." [44]  The court noted that the debtor was a truck driver, and denial of the exemption would deprive the debtor of a tool necessary for the exercise of his trade, calling or profession.[45]  It also relied on the *Hamner* decision, which is discussed below.

In contrast, *Vicknair*,  is similar to  the instant case, and involves the debtor's decision to exempt a vehicle under subsection (d),  as well as a school bus as a tool of the trade under subsection (a).[46]  As discussed in the *Vicknair* decision, existing case law limits the debtor's exemption to a single vehicle, and which would deny

---

[42]   An unpublished decision of Honorable T.M. Brahney, III of the United States Bankruptcy Court for the Eastern District of Louisiana, dated December 15, 2003 in Case No. 03-16522.

[43]   135 So. 77 (La. App. 2nd Cir. 1931).

[44]   Damon Lewis, No. 03-16422, pg. 5 (Bankr. E.D.La. Dec. 15, 2003).

[45]   *Id.*

[46]   Romano's schedule C, p. 1 in Case 04-19155, lists two vehicles claimed as exempt.

the exemption for a vehicle which exceeds the value stated in subsection (d) of  the statute.

The *Hamner* decision is similarly distinguishable.   *Hamner*, a 1931 case, involved the issue of whether the exemption statute as it existed at that time would permit exemption of a Chevrolet truck, which was use by the debtor as a school bus, and also in the debtor's farming operations as a grower of cotton, corn and other agricultural products.  A judgment was rendered by the trial court sustaining the exemption of the truck as a tool of the trade, and an appeal was taken; however, the appellant failed to file an appeal brief or make an appearance in the appeal.[47] The court held that the evidence established that the debtor was engaged primarily as a school bus driver for nine months of the year,  farmed unprofitably on the side, and that the truck was his only asset.  Accordingly, the court held that the truck was necessary to the debtor's trade or profession, and was exempt as a tool or instrument under article 644 of the Code of Practice.[48]

Article 644, however, did not deal specifically with motor vehicles, which at that time were relatively new and not commonly used, as they are today.  Instead, article 644 exempted merely "tools and instruments" necessary for a trade or

---

[47] *Hamner*, 135 So. at 77.

[48] *Id.* at 78.

-14-

profession, without any mention of motor vehicles. In contrast, the exemption statute now specifically provides at §3881(A)(2) for property necessary to the exercise of a trade to be exempt, including: (a) tools and (d) $7500 in equity value for one motor vehicle per household used by the debtor and his family in exercising a trade, calling or profession or used for transportation to and from the place where the debtor earns his livelihood. The statute specifies that one motor vehicle per household may be exempt if used in the debtor's trade or as transportation to and from the debtor's workplace, and limits that exemption to $7500 in equity value. Subsection (d) is specific, and provides for the exemption of a motor vehicle used in the debtor's trade, calling or profession, while subsection (a) generally exempts "tools." Article 644 was generally worded, and could be interpreted to include a truck as an exempt "tool." The exemption statute as it exists today is specific, and limits the exemption of a motor vehicle used in the debtor's trade, calling, or profession to that found in §3881(A)(2)(d).

For the foregoing reasons, this court respectfully declines to apply the decision of *Belsome* in all exemption cases arising in this court. An appropriate

order will be entered denying the exemption claimed for the 1995 International

school bus for the reasons stated herein and in the *Vicknair* case.

New Orleans, Louisiana, May 18, 2005.

_____
Jerry A. Brown
U.S. Bankruptcy Judge